IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN  DIVISION

| | |
|---|---|
| **WESLEY P. FRYE, CONSERVATOR OF JAMES VAUGHN SLAGHT;** | ]<br>]<br>] |
| **JEAN SLAGHT, GUARDIAN OF JAMES VAUGHN SLAGHT,** | ]<br>] |
| **Plaintiffs,** | ]    **CV-08-BE-1918-E**<br>]<br>] |
| v. | ]<br>] |
| **AUTO-OWNERS INSURANCE CO.,** | ]<br>] |
| **Defendant** | ]<br>]<br>] |

## MEMORANDUM OPINION

This matter comes before the court on Plaintiffs' "Motion to Stay the Proceedings and Compel Arbitration" (doc. 27);  "Plaintiffs' Renewed Motion to Stay Proceedings and Compel Arbitration" (doc. 50); "Defendant Auto-Owners Insurance Company's Motion to Stay and/or Enjoin AAA Arbitration Proceedings"(doc. 33); and Defendant's "Motion for Summary Judgment" (doc. 23).  The parties disagree about whether Plaintiffs have waived their right to arbitration and whether the endorsement that contains the arbitration agreement applies.  For the reasons stated in this Memorandum Opinion, the court finds that Plaintiffs' motions are due to be GRANTED to the extent that they request this court to compel arbitration, but that they are due to DENIED to the extent that they request a stay in this case; the court finds instead that this case is due to be DISMISSED WITHOUT PREJUDICE to its being reopened if necessary and appropriate.  Defendant's Motion to Stay and/or Enjoin AAA Arbitration Proceedings is due to

1

be DENIED.  In light of those rulings, the court will not rule on Defendant's "Motion for Summary Judgment" (doc. 23).

## I.  PROCEDURAL HISTORY

This is an action on an insurance policy where Plaintiffs seek benefits under the Uninsured Motorist Endorsement provisions of a policy of motor vehicle insurance that Defendant Auto-Owners Insurance Company issued.  Approximately one year after Plaintiffs filed the suit, Auto-Owners filed a motion for summary judgment (doc. 23) with supporting exhibits, including the Uninsured Motorist Endorsement (doc. 23-1, Ex. H).  Plaintiffs claim that the filing of this exhibit was the first disclosure of the Uninsured Motorist Endorsement and its arbitration agreement, because neither the Endorsement nor the Auto-Owners policy was produced as part of Auto-Owners Initial Rule 26 disclosures or as a timely response to a discovery request.  Within a week of Defendant's filing that motion, Plaintiffs filed their original motion to stay proceedings and compel arbitration (doc. 27), and Auto-Owners not only responded to that motion (doc. 30)  but also filed a motion to stay and/or enjoin arbitration (doc. 33).  Judge Propst, who was then presiding over the case, entered an Order (doc. 34) requiring the Plaintiff to file a brief stating why the decision of *Lambert v. State Farm*, 576 So. 2d 160 (Ala. 1991) would not be applicable to the instant case.  The court also stayed the arbitration proceedings until the court made a ruling on the motion to compel arbitration (doc. 35).

Before the court ruled on the motion to compel arbitration, Plaintiffs filed a notice of their interlocutory appeal of the order staying arbitration proceedings (doc. 36) and also filed a motion to stay proceedings in the district court pending resolution of the appeal (doc. 37).  The Eleventh Circuit dismissed the appeal for lack of jurisdiction, finding that the district court's orders were

not interlocutorily appealable (doc. 48).  Shortly thereafter, the case was reassigned to the current judge (doc. 49), and Plaintiffs renewed their motion to stay proceedings and compel arbitration (doc. 50).

## II.  FACTS

On August 30, 2007, James P. Kelsey was driving a vehicle on the wrong side of the road and hit head-on the vehicle that James Slaght was driving, severely injuring Slaght. Kelsey was arrested at the scene of the accident and charged with Driving Under the Influence.  As a result of the accident, Slaght suffered a perforated colon and resulting infection, was hospitalized for nearly a month, and after his release, underwent extensive therapy, rehabilitation, a colostomy, and a successful surgical reversal of his colostomy.  Because of his injuries, James Slaght is unable to manage his affairs, and the Probate Court of Calhoun County has issued orders appointing Frey as his conservator and Jean Slaght as his guardian.

During Slaght's illness, Frey has handled negotiations and settlements with various insurance companies insuring the vehicles involved in the accident.  The vehicle that Kelsey operated was insured under an insurance policy issued by The Hartford with policy limits of $100,000, which have been paid to James Slaght.

At the time of the accident, James Slaght was the owner of a single policy of motor vehicle insurance, issued by State Farm Mutual Auto Insurance Company with policy limits of $20,000 for under-insured/uninsured motor vehicle.  State Farm has paid those UIM/UM policy limits to James Slaght.  *Pro tanto* settlements with The Hartford and State Farm were executed on Slaght's behalf.

Slaght's Body Shop and/or Carlos and Jean Slaght owned the car that Mr. Slaght was

driving at the time of the accident, and the body shop was the owner of and insured under a motor vehicle insurance policy that Defendant Auto-Owners issued.  After the settlement with The Hartford and about the time of the settlement with State Farm, Frey obtained from State Farm the contact information for the local Auto-Owners representative.  The Auto-Owners policy included an Uninsured Motorist Endorsement, and Slaght has made repeated demands for the Auto-Owners' UIM/UM policy limits of $60,000.   On May 27, 2008, after Slaght's fourth demand letter, Auto-Owners sent a letter to Frey that did not contain a reservation of rights or a claim of forfeiture; it simply requested information regarding what expenses insurance companies had paid and whether they demanded reimbursement, and the causal connection between the accident in question and Slaght's injuries.   Auto-Owners did not provide a copy of the policy in question.  In a letter dated June 4, 2008, Auto-Owners refused to pay Slaght UIM/UM benefits, claiming that it had been prejudiced by Slaght's failure to obtain Auto-Owners' consent prior to executing *pro tanto* settlements with The Hartford and State Farm, citing *Lambert v. State Farm Mutual Insurance Co.*, 576 So. 2d 160 (Ala. 1991).

As noted above, Plaintiffs claim to have seen the Auto-Owners Uninsured Motorist Endorsement to Slaght's policy – and discovered the existence of the arbitration agreement in that endorsement – for the first time with the filing of the endorsement as an exhibit to Auto-Owners' motion for summary judgment.  The endorsement includes the following relevant exclusions and conditions:

### EXCLUSIONS

The endorsement does not apply:

1. to bodily injury to an insured or care or loss of services recoverable

>by an insured, with respect to which such insured, his legal representative or any person entitled to payment under this endorsement shall, without written consent of the Company, make any settlement with any person or organization who may be legally liable therefor;
>
>. . .
>
>**CONDITIONS**
>
>6. ARBITRATION.  If any person making claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this endorsement then, upon written demand of either, the matter or matters upon which such person and the Company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association unless other means of conducting the arbitration are agreed to between the insured and the Company, and judgement upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.  Such person and the Company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement.  Such an award shall be a condition precedent to any action against Company.

AAA Rules under "Jurisdiction" provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and "shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." AAA Commercial Arbitration Rules and Mediation Procedures Rule 7(a) & (b).

### III.  DISCUSSION

Plaintiffs' motion requests the court to stay proceedings in this case and compel arbitration.  Defendant argues that Plaintiffs have waived their right to arbitrate, and further, that the arbitration agreement does not apply because the Uninsured Motorist Endorsement containing

5

the arbitration agreement falls under one of the exclusions listed in the endorsement. Defendant insists that the court must first decide whether the endorsement applies and only if the court decides in favor of its applicability would the provision incorporating AAA rules come into play. On the other hand, Plaintiffs argue that because the parties have incorporated the rules of the AAA into their agreement, the arbitrator – not the court – decides arbitrability, including defenses to arbitration such as waiver and applicability of the endorsement. Thus, Plaintiffs would have this court compel arbitration and allow the arbitrator to decide whether they have waived arbitration and whether the endorsement with the arbitration agreement applies. In light of those opposing views, the threshold question for this court is whether the court or the arbitrator should decide the applicability of the endorsement containing the arbitration agreement.

Generally, the validity of the arbitration agreement is an issue for the court, not the arbitrator, to decide "unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Parties may contract around that general rule, however, by incorporating into the contract a provision that AAA rules apply; because AAA rules provide that the arbitrator decides arbitrability, the incorporation of AAA rules clearly and unmistakably evidences the parties' agreement that the arbitrator and not the judge decides arbitrability. *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship,* 432 F.3d 1327, 1332 (11th Cir. 2005). Specifically, AAA Rules 7(a) & 7(b) provide:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the

>contract.  A decision by the arbitrator that the contract is null and void shall
>not for that reason alone render invalid the arbitration clause.

AAA Commercial Arbitration Rules and Mediation Procedures Rule 7(a) & (b).

Applying the *Terminix* decision to the fact of the instant case, and keeping in mind the text of the AAA rules, the parties' incorporation of AAA rules into the Uninsured Motorist Endorsement at issue means that the parties did indeed contract around the general rule, clearly and unmistakably evidencing their agreement that the arbitrator – and not this court – should decide the arbitrability issues raised.

Defendant argues that, by the clear terms of the endorsement itself, the endorsement does not apply if – as in the instant case – the person making a claim under it has settled with the tortfeasor's insurance company without first gaining the UIM/UM carrier's consent.  The Supreme Court of Alabama recognized the validity of such a consent requirement in the case of *Lambert v. State Farm,* 576 So. 2d 160, 167 (Ala. 1991).  Defendant reasons that if the endorsement does not apply, then the provision about the AAA rules is not part of the contract and cannot be invoked.

Defendant must address its arguments about waiver and the applicability of the endorsement to the arbitrator and not this court.  As noted previously, in including the provision about the AAA rules, the parties contracted around the general rule that the court makes the threshold decision about arbitrability, and thus, the arbitrator must rule on the "existence, scope or validity of the arbitration agreement."  AAA Rule 7(a).  Further,  the AAA rules do not limit the arbitrator's jurisdiction to addressing the validity of the arbitration clause in isolation from the contract containing that clause; Rule 7(b) also bestows upon the arbitrator the "power to

determine the existence or validity of a contract of which an arbitration clause forms a part." Thus, in the instant case, the arbitrator would also have the power to rule on whether the endorsement containing the arbitration agreement applies. The court notes that even if some doubt does exist in this case concerning the scope of arbitrable issues, in light of the strong federal policy favoring arbitration, the court must follow the Supreme Court's direction and resolve those doubts in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").

Therefore, the court finds that Defendant's motion to stay and/or enjoin arbitration is due to be DENIED, and Plaintiffs' motions are due to be GRANTED to the extent that they request this court to compel arbitration. However, rather than stay the case, the court will DISMISS it WITHOUT PREJUDICE to reopening this case if necessary and appropriate.

The court will enter a separate Order contemporaneously with this Memorandum Opinion.

DONE and ORDERED this 19th day of May, 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE